IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

NATHAN HUGHES,

        Petitioner,

v.                                CIVIL ACTION NO.  6:07-cv-00702
                                 (Criminal No. 6:04-cr-00127-4)

UNITED STATES OF AMERICA,

        Respondent.

**MEMORANDUM OPINION AND ORDER**

      Pending before the court is Nathan Hughes's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "§ 2255 motion") [Docket 568].  The Honorable Mary E. Stanley, United States Magistrate Judge, has submitted her Proposed Findings and Recommendation ("PF&R").  The Magistrate Judge recommends that I grant the § 2255 motion, because Hughes's trial counsel and appellate counsel, in certain instances, gave ineffective assistance.  She recommends that Hughes's other claims, however, be dismissed.

      The PF&R presents the facts and the parties' respective legal arguments.  Both Hughes and the government have filed objections to the PF&R.[1]  Hughes objects to the Magistrate Judge's conclusions that (1) there was no prosecutorial misconduct, and (2) there was no ineffective assistance of counsel with respect to counsel's (a) preparation for trial, (b) failure to move for

---

[1] Also pending is Hughes's motion to alter or amend the pleadings [Docket 628], filed the same day as his objections to the PF&R.  Hughes states that the PF&R findings prompted his motion to amend.  The arguments set forth in the motion are related to the PF&R and are more appropriately treated as objections.  The motion is therefore **DENIED**.

severance, (c) failure to take note of an adequate defense, (d) failure to object to jury instructions, (e) failure to move pursuant to Rule 29, (f) failure to permit Hughes to testify at trial and (g) failure to object to relevant conduct. The Magistrate Judge disposed of these arguments in the PF&R. Having reviewed the PF&R *de novo* and the record in light of Hughes's objections, I conclude that Hughes's objections lack merit.

The government objects to each of the Magistrate Judge's grounds for granting relief. It argues that neither Hughes's trial counsel nor his appellate counsel were ineffective and that Hughes's § 2255 motion should be denied. As explained below, I agree with the government and decline to adopt the Magistrate Judge's recommendation that relief be granted.

## I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

To succeed on an ineffective-assistance-of-counsel claim, a movant must show that his lawyer's performance was both objectively unreasonable and prejudicial. *Strickland v. Washington*, 466 U.S. 668 (1984). To satisfy the prejudice prong, the movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In his § 2255 petition, Hughes asserts, inter alia, that his trial counsel was ineffective for failing to move for a new trial on the conspiracy charge after Kirt King, the ringleader of the conspiracy and Hughes's co-defendant, made exculpatory statements about Hughes in a letter to this court. In his letter, King stated that he had "never dealt with Nathan Hughes," and that "the only reason [Hughes] was at [King's] house [during the conspiracy] was because [King's] girlfriend and [Hughes's] girlfriend were hanging out together and [Hughes] was always looking for her." The

Magistrate Judge determined that trial counsel was ineffective in failing to move for a new trial after King made the exculpatory statements. She explains that "a post-sentencing motion for new trial was likely to be successful, and that the newly discovered evidence would probably have resulted in acquittal of Nathan Hughes on the conspiracy charge at a new trial." (PF&R 28.)

In determining whether Hughes was prejudiced by his lawyer's decision not to move for a new trial based on King's letter, the Magistrate Judge relied on the five-part test in *United States v. Chavis,* 880 F. 2d 788, 793 (4th Cir. 1989). In *Chavis*, the Fourth Circuit explained that a new trial based on newly discovered evidence is warranted only if (1) the evidence is newly discovered; (2) the court may infer due diligence on the part of the movant based on the alleged facts; (3) the evidence relied upon is not cumulative or impeaching; (4) the evidence is material to the issues involved; and (5) the evidence would "probably result in acquittal at a new trial." *Id.* Finding that Hughes satisfied all five prongs, the Magistrate Judge recognized that the fifth factor was "the most difficult to assess because King's credibility has not been tested." (PF&R 26.)

The Magistrate Judge concluded that Kirt King's exculpatory statements would probably result in an acquittal. She observed that, "[a]t a new trial at which Nathan Hughes is the lone defendant, Kirt King's candid testimony that King engaged in a significant drug conspiracy, but that Hughes was not a participant, and that Hughes' presence at King's house had a legal purpose, as corroborated by Rebecca Allen and Shannon O'Rourke, would probably be persuasive." (*Id.*) The Magistrate Judge determined that, as a co-defendant, King would have likely refused to testify at Hughes's trial, because doing so would have opened him up to cross-examination and potential self-incrimination. She explained that "[t]he evidence against Nathan Hughes was decidedly thin," (*id.* at 27), and that Kirt King, as the leader of the conspiracy, "was in the best position to know with

3

whom he was conspiring," (*id.* at 28). Furthermore, the Magistrate Judge emphasized, "[t]he evidence of Kirt King's willingness to testify to exculpate Hughes is not limited to his hand-written letter"; King also made exculpatory statements regarding Hughes during his own allocution. (*Id.* at 26-27.) Thus, the Magistrate Judge concluded, Hughes's trial counsel was ineffective for not seeking a new trial based on this newly discovered evidence.

Having reviewed the record *de novo*, I decline to adopt the Magistrate Judge's analysis. King's exculpatory statements do not satisfy *Chavis*, and therefore Hughes cannot show prejudice. Although the Magistrate Judge characterized the evidence against Hughes as "decidedly thin" and supported by "only circumstantial evidence," (*id.* at 27), the trial evidence nonetheless proved that Hughes was involved in the drug conspiracy for at least a year prior to his arrest. Sherman King testified that for approximately a year prior to their arrest, he saw Hughes come to Kirt King's house several times, give Kirt King money and leave with a bag late at night. Sherman King also testified that Hughes was a regular visitor at Kirt King's residence. Hughes told Sherman King that he had disposed of between $30,000 and $100,000 and approximately 13 ounces of cocaine on the day of the law enforcement raids in 2004 that resulted in the conspirators' apprehension. Sherman King testified that Hughes disposed of the money and drugs out of a fear that he was going to be ensnared with his co-defendants. Additionally, Curtis Richards testified to seeing Hughes at Kirt King's house on several occasions, and that Hughes and King would go off together into a different room at times. Further, Steve Gandee, a co-conspirator, testified that he saw Hughes at Kirt King's residence and that he had distributed cocaine with Hughes at a Parkersburg bar. Gandee testified that, while the three men were incarcerated together, he overheard Kirt King remind Hughes that Hughes owed King $1400.

King's post-trial statements are suspect, to say the least. King is a convicted drug dealer who was the ringleader of a cocaine distribution conspiracy. His statements were made after Hughes's trial and were not subject to cross-examination. They directly contradict the sworn testimony of numerous witnesses with personal knowledge that proved Hughes's involvement in the drug conspiracy. Furthermore, King's assertions seem implausible given the foregoing testimony of their actions at King's house, and Hughes's actions the day of the conspiracy raid. Accordingly, in light of the entirety of the record, King's statements would not have resulted in Hughes's acquittal. Because Hughes cannot show prejudice by trial counsel's decision not to move for a new trial based on Kirt King's statements, his ineffective-assistance-of-counsel claim must fail.

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

As an independent ground for vacating Hughes's sentence, the Magistrate Judge concluded that appellate counsel was ineffective in failing to appeal Hughes's sentence based on erroneous jury instructions. As explained below, I disagree and decline to adopt this aspect of the PF&R.

A defendant is entitled to effective assistance of counsel on direct appeal of his criminal conviction. In the appellate context, a movant must make the same *Strickland* showing as previously discussed—deficient performance and prejudice. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). I will begin with *Strickland*'s prejudice prong.

In *United States v. Collins*, the Fourth Circuit recognized that the Supreme Court's decision in *Apprendi v. New Jersey* requires that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Collins*, 415 F 3d 304, 313 n.15 (4th Cir. 2005) (quoting *Apprendi*, 530 U.S. 466, 490 (2000)). To

comply with this constitutional requirement, the court held that in a drug conspiracy prosecution, a district court must instruct the jury to determine the drug quantity reasonably foreseeable to the defendant for purposes of setting a specific threshold drug quantity under § 841(b). *Id.* at 314.

Here, the Magistrate Judge determined that this court committed *Collins* error by failing to instruct the jury to determine the quantity of cocaine in the conspiracy attributable to Hughes. Having found plain error, the Magistrate Judge determined that "[t]here is a strong probability that if [appellate counsel] had raised a *Collins* issue, that Defendant's appeal would have resulted in a remand for re-sentencing, with a significantly lower sentence being imposed. Thus Defendant's substantial rights were affected and he has shown prejudice." (PF&R 50.)

To determine if Hughes was prejudiced by his appellate counsel's failure to raise *Collins* error, I must first determine the standard of review that the court of appeals would have applied to that claim. A properly preserved error is generally reviewed for harmless error, while a non-preserved error is reviewed for plain error. Hughes was tried before *Collins* was decided. At trial, Hughes's counsel requested on numerous occasions for the district court to insert drug quantity as an element of the conspiracy offense. Mr. Dascoli stated to the court, "The elements for Count One of the conspiracy . . . the amount of 500 grams is not listed as an element and I think it should be under *Blakely v. Washington*[, 542 U.S. 296 (2004)]." (Tr., Vol. IV 85-86 [Docket 306].) While counsel did not make a textbook *Collins* objection, *Collins* had not yet been decided. Counsel was clearly objecting to any fact being found by the court and not the jury—the very argument that is the basis of *Collins*. *See Collins*, 415 F.3d at 314. Thus, the *Collins* error was preserved. Had the court of appeals considered Hughes's *Collins* argument, the claim would have been reviewed for harmless error, rather than plain error.

"[T]he test for determining whether a constitutional error is harmless . . . . is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. 1, 15 (1999). Furthermore, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Fed. R. Crim. P. 52(b). As explained below, although my instructions in Hughes's trial contravened *Collins*, the failure of Hughes's appellate counsel to raise this issue did not prejudice him.

In the PF&R, the Magistrate Judge concluded that "[t]here is a strong probability that if Ms. Hallinan had raised a *Collins* issue, that Defendant's appeal would have resulted in a remand for re-sentencing, with a significantly lower sentence being imposed." (PF&R 50.) I disagree. A *Collins* error violates a defendant's substantive rights only if his sentence exceeds the maximum statutory penalty under the default range. *See United States v. Brooks*, 524 F.3d 549, 553-54 (4th Cir. 2008) ("In the absence of a jury determination of this threshold quantity, or an admission . . . as to the drug quantity attributable to [the defendant], his sentence must fall within the default penalty subsection . . . ."). The Magistrate Judge noted two unpublished Fourth Circuit decisions that appear to require re-sentencing following *Collins* error, even if the defendant's sentence was within the statutory penalty range. (*See* PF&R 48-49 (discussing *United States v. Ferguson*, 245 F. App'x 233, 234 (4th Cir. Aug 8, 2007) (imposing 235-month sentence) and *United States v. Hambrick*, 245 F. App'x 288 (4th Cir. Aug 3, 2007) (imposing mandatory minimum five-year sentence based on drug quantity))). But on closer inspection, the defendants in those cases were sentenced outside the applicable default statutory range. Those decisions involved sentences for marijuana conspiracy offenses. In contrast to the default provision for cocaine offenses in 21 U.S.C. § 841(b)(1)(C), which sets the maximum penalty at twenty years, the default provision for marijuana offenses carries a maximum five-year

7

sentence. 21 U.S.C. § 841(b)(1)(D) ("In the case of less than 50 kilograms of marihuana, . . . such person shall . . . be sentenced to a term of imprisonment of not more than 5 years."). Thus, the sentences in *Ferguson* and *Hambrick* exceeded the applicable default statutory provision, and they were vacated on that basis.

"*Collins* commits to the jury the issue of threshold drug quantity for *statutory* purposes only. It does not require a jury to determine any drug quantities that may be attributable to a § 846 defendant for Sentencing Guidelines purposes." *Brooks*, 524 F.3d at 560 n.20. The default penalty range for a cocaine conspiracy offense is a prison sentence between zero and twenty years. 21 U.S.C. § 841(b)(1)(C). Hughes's sentence—140 months—did not exceed that range. Because Hughes's sentence was less than the maximum statutory penalty, the *Collins* error did not affect his substantial rights and was thus harmless. Therefore, Hughes was not prejudiced by his appellate counsel's failure to make the *Collins* argument, and counsel was not ineffective.

I therefore decline to adopt the Magistrate Judge's recommendation that movant be granted relief under *Strickland*. However, I adopt and incorporate the remainder of the Magistrate Judge's very thorough and well-reasoned analysis regarding the other grounds raised by Hughes for which she found no relief to be warranted. I thus **DENY** Hughes's motion to vacate, set aside, or correct his sentence [Docket 568] and his motion to alter or amend the pleadings [Docket 628].

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record, the movant, and the Magistrate Judge.

ENTER: October 15, 2009

Joseph R. Goodwin, Chief Judge

8